Edward W. MARSHALL, Plaintiff,

v.

Donna SHALALA, Secretary of Health
and Human Services, Defendant.
(Two Cases)

Civil Action Nos. 96–2103 (PLF),
97–0266 (PLF)

United States District Court,
District of Columbia.

Aug. 14, 1998.

David H. Shapiro, Swick & Shapiro, Washington, DC, for Plaintiff.

Stacy M Ludwig, Assistant U.S. Attorney, Washington, DC, for Defendant.

## OPINION

**PAUL L. FRIEDMAN, District Judge.**

These consolidated cases are before the Court on defendant's motion for summary judgment. Upon consideration of the motion and memorandum of points and authorities in support of the motion, plaintiff's opposition, defendant's reply, and the arguments presented by counsel in open Court, the Court concludes that defendant's motion should be granted.

## I. BACKGROUND

In these employment discrimination cases, Edward Marshall, a 60–year–old African American male, alleges that his employer discriminated against him on the basis of his race, sex and age and retaliated against him because he complained about such discrimination. He was employed at the U.S. Department of Health and Human Services, Administration on Children, Youth and Families ("ACYF"), Administration on Children and Families, ("ACF"), Family and Youth Services Bureau ("FYSB").[1] Mr. Marshall brings his claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and/or the Age Discrimination in Employment Act, 29 U.S.C. § 633a. He seeks compensatory damages of $600,000, a promotion to the GS–13 level, back pay and correction of all HHS records, including plaintiff's official personnel folder.[2]

During the relevant time period, plaintiff was a Youth Development Program Specialist, GS–12 (step 8) in the Program Operations Division ("POD") of FYSB.[3] Mr. Marshall has been a GS–12 level employee at HHS for 15 years, and from mid–1992 to mid–1995 he received performance ratings of either "excellent" or "fully successful." Mr. Marshall claims that "the journeyman level" for his career field at FYSB is GS–13, and that he has been denied the opportunity to gain a promotion to this level despite having consistently received successful and excellent job performance ratings. He claims that during his 15–year tenure, mostly white females, all younger than he, have been pro-

1. Mr. Marshall no longer works in FYSB. In 1997 he was transferred to another division of ACF.

2. Plaintiff has filed two separate complaints (Civil Action No. 96–2103 and Civil Action No. 97–0266), which were consolidated by the Court's Order of February 14, 1997. Although the complaints present virtually the same background facts, Civil Action No. 96–2103 presents claims of discrimination and retaliation, while Civil Action No. 97–0266 adds additional claims of retaliation in violation of Title VII.

3. FYSB also has another division, Program Support Division ("PSD").

moted to the GS–13 level at FYSB. Terry Lewis, a white female who is plaintiff's second level supervisor, is allegedly the source of this promotion bias in favor of young, white, female employees.

From May 1992 to July 1995, four GS–13 positions at FYSB were filled by white females, all younger than Mr. Marshall. In May 1992, Ms. Lewis laterally hired Donna Litton (a GS–13 in another department in ACF) into a GS–13 position at FYSB. This position was not posted and therefore was filled by noncompetitive means. In the summer of 1993, Ms. Litton left that position, and Ms. Lewis laterally (and noncompetitively) hired Judy Moore, another GS–13, to fill Ms. Litton's vacant position. Also in the summer of 1993, Gina Barbero lateraled into a GS–13 position at FYSB from her GS–13 position in another ACF department; according to defendant, Ms. Barbero brought her GS–13 position with her from another ACF office and FYSB obtained an additional GS–13 level position as a result. Finally, in July of 1995, Alice Bettencourt, an FYSB employee, was promoted from GS–12 to GS–13 after requesting a desk audit.

On August 18, 1993, Mr. Marshall filed a formal administrative EEO complaint concerning the denial of promotion opportunities since 1988 based on his race, sex and age. Mr. Marshall alleges that after submitting his complaint, he was subjected to further discrimination and retaliation for having complained of discrimination (including the lowered performance ratings). On July 20, 1995, Mr. Marshall lodged a second formal administrative complaint of discrimination and retaliation. He claims that he continued to be subjected to discrimination and retaliation after filing his second complaint. On July 22, 1996, Mr. Marshall filed a third formal complaint of discrimination and retaliation.

According to defendant, from 1994 to 1996 Mr. Marshall subjected one FYSB employee to unwelcome sexual attention and verbally threatened another employee (his immediate supervisor, Pamela Johnson), which ultimately prompted an investigation into plaintiff's behavior by James Harrell, Deputy Commissioner of ACF.

After a reorganization of FYSB in 1997, two GS–13 positions opened up, the positions were posted, and two African American males were hired to fill those positions. Mr. Marshall did not apply for either position.

Also in 1997, Mr. Marshall was transferred out of FYSB to a position in the Office of the Commissioner, Policy and Planning Branch. Plaintiff claims that this transfer was the ultimate retaliation against him, but defendant maintains that Mr. Marshall was transferred because he had expressed his dissatisfaction with the plans to reorganize FYSB.

The defendant puts forth several reasons why plaintiff is unable to establish a *prima facie* case for his claims of discrimination and retaliation or that plaintiff's claims otherwise fail. Plaintiff's brief in opposition is unresponsive to many of these arguments. The Court assumes that those arguments to which plaintiff provides no response have been conceded.

## II. DISCUSSION

### A. *Summary Judgment Standard*

Under Rule 56, Fed.R.Civ.P., summary judgment should be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505; *see also Washington Post Co. v. U.S. Dept. of Health and Human Services*, 865 F.2d 320, 325 (D.C.Cir.1989).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Rule

56(e), Fed.R.Civ.P.; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in his favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C.Cir.1987). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249–50, 106 S.Ct. 2505.

In order to prevail in a case initiated under either Title VII or the ADEA, the plaintiff initially must establish a *prima facie* case of prohibited discrimination or retaliation. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Koger v. Reno*, 98 F.3d 631, 633 (D.C.Cir.1996) (observing that the *prima facie* elements of a Title VII case are analogous to those applicable to an ADEA case); *Cuddy v. Carmen*, 694 F.2d at 853, 857 (D.C.Cir.1982) (same); *see O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 310, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). If the plaintiff succeeds in making out a *prima facie* case, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory and/or nonretaliatory reason for the challenged action. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Ware v. Howard University*, 816 F.Supp. 737, 749–750 (D.D.C. 1993) (ADEA cases governed by same evidentiary scheme as in Title VII cases).

Once the defendant articulates a legitimate reason for its action, the presumption raised by the *prima facie* case is rebutted, and the burden shifts back to the plaintiff to produce some evidence, either direct or circumstantial, to show that the defendant's proffered reason for its actions is a mere pretext for discrimination or retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802–05, 93 S.Ct. 1817; *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Summary judgment "is appropriate where either the evidence is insufficient to establish a *prima facie* case, ... or, assuming a *prima facie* case, there is no genuine issue of material fact that the

defendant's articulated non-discriminatory reason for the challenged decision is pretextual." *Paul v. Federal Nat'l Mortgage Ass'n*, 697 F.Supp. 547, 553 (D.D.C.1988); *see Ramsey v. Derwinski*, 787 F.Supp. 8, 11–12 (D.D.C.1992); *Skelton v. ACTION*, 668 F.Supp. 25, 29–30 (D.D.C.1987).

While summary judgment must be approached with special caution in discrimination cases, and the Court "must be extra-careful to view all the evidence in the light most favorable" to plaintiff, *Ross v. Runyon*, 859 F.Supp. 15, 21–22 (D.D.C.1994), a plaintiff is not relieved of his obligation to support his allegations by affidavits or other competent evidence showing that there is a genuine issue for trial. Specifically, if defendant provides evidence of a legitimate non-discriminatory reasons, plaintiff "must then bring forward evidence of the pretextual nature of the legitimate non-discriminatory purpose posited by defendant.... Evidence of discrimination that is 'merely colorable,' or 'not significantly probative' cannot prevent the issuance of summary judgment." *Johnson v. Digital Equipment Corp.*, 836 F.Supp. 14, 15 (D.D.C. 1993) (citation omitted).

### B. *Plaintiff's Discrimination Claim: Failure to Promote*

██ In order to make out a *prima facie* case of discrimination for failure to promote under Title VII or the ADEA, plaintiff must show that (1) he belongs to a protected group; (2) he was qualified for and applied for a promotion; (3) he was considered for and denied the promotion; and (4) other employees who were not members of the protected group were indeed promoted at the time plaintiff's request for a promotion was denied. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. at 310, 116 S.Ct. 1307; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. at 252, 101 S.Ct. 1089; *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802, 93 S.Ct. 1817. With respect to the last element, in an age discrimination case plaintiff must show that the employer selected a younger employee. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. at 312–13, 116 S.Ct. 1307; *Cuddy v. Carmen*, 694 F.2d 853, 856–57 (D.C.Cir.1982).

■ The Court concludes that plaintiff cannot establish a *prima facie* case of discriminatory non-promotion because he cannot meet the second element necessary for a *prima facie* case: he has not demonstrated that he was qualified for and *applied for* a promotion to the GS–13 level. This case concerns allegations of a failure to promote plaintiff to the GS–13 level, *not* a failure to promote him to a specific position with specific duties. *See* Complaint, Civil Action No. 96–2103 ¶ 8; Complaint, Civil Action No. 97–0266 ¶ 7. Yet plaintiff never took the steps necessary to "apply for" a grade increase. Three specific GS–13 positions at FYSB were non-competitively filled by white females, but all three of them already were at the GS–13 level; none of them was promoted.

■ The fourth position was filled by promoting a GS–12, Alice Bettencourt, to a GS–13 level after she had requested a promotion through a process called a "desk audit."[4] Plaintiff, too, always had the opportunity to be non-competitively promoted through the "desk audit" process, but it is undisputed that, unlike Ms. Bettencourt, Mr. Marshall never applied. *See* Deposition of Edward W. Marshall ("Marshall Dep.") at 42, 55, 69–70. Having failed to apply for a promotion to the higher grade, Mr. Marshall cannot now complain that he "has been denied the opportunity to gain promotion to the GS–13 level during the entirety of his time as a GS–12 employee." Complaint, Civil Action No. 96–2103, ¶ 8; Complaint, Civil Action No. 97–0266, ¶ 7. In fact, that opportunity existed all along and he simply failed to seize it. Be-

cause plaintiff failed to take even the most elementary step necessary by applying for a promotion to the GS–13 level, this Court finds that plaintiff has failed to establish a *prima facie* case of discriminatory non-promotion.[5]

Nor can plaintiff establish the fourth element of a *prima facie* case of non-promotion: with the exception of Ms. Bettencourt, he cannot show that other employees who were not members of plaintiff's protected group were *promoted.* Not one of the three white women who assumed GS–13 positions in FYSB in 1992 and 1993 was promoted. The position that became available in May of 1992 was filled by Ms. Litton. Ms. Litton was already a GS–13 before transferring to the vacated position and therefore was not promoted. Declaration of Terry Lewis ¶ 8. Nor was the woman who filled Ms. Litton's position after she left, Ms. Moore, promoted; Ms. Moore was also a GS–13 before taking the vacant position. *Id.* at ¶ 10. In June of 1993, Ms. Barbero laterally transferred her GS–13 position from another ACF office into FYSB and therefore was not promoted. *Id.* at ¶ 11. The only woman who was in fact promoted during the time relevant to plaintiff's complaints was Ms. Bettencourt in 1995. She was promoted, however, only because she had requested a desk audit—something that was always available to plaintiff; yet he failed to make the same request. *Id.* at ¶ 12.

Because plaintiff cannot establish a *prima facie* case of discriminatory non-promotion, the Court will grant judgment for the defendant with respect to this claim.[6]

---

4. Although the term "desk audit" apparently is never specifically defined anywhere in the record, the Court understands a desk audit to be a process by which an employee may request his or her work to be reviewed and if, in the eyes of the reviewers, that work is at a level higher than that at which the employee is currently graded, the employee will be promoted to the level which is reflected by his or her performance. *See* Declaration of Terry Lewis ¶ 12.

5. It is also worth nothing that in 1997, FYSB posted two GS–13 positions, neither of which plaintiff applied for. Two African American males ultimately were selected. *See* Declaration of Terry Lewis ¶ 13.

6. To the extent that plaintiff may be claiming discrimination on the basis of certain perfor-

mance evaluations, the Court will also enter judgment for defendant on this claim—substantially for the reasons stated in the government's memorandum in support of its motion for summary judgment at 25–28. Plaintiff has never responded to the government's arguments regarding this claim, and the Court therefore concludes that these issues are conceded. Plaintiff himself labels his claims with respect to the performance evaluations only as claims of retaliation, not as claims of discrimination. *See* Pl.'s Opp'n at 21–22, 32. The performance evaluation retaliation claim is considered *infra* at 13–14.

To the extent that such a claim was made, the Court will also enter judgment for defendant with respect to plaintiff's claim of discrimination based on the fact that Pamela Johnson, Mr. Marshall's supervisor, reneged on an alleged promise

## C. Plaintiff's Retaliation Claims

■ A *prima facie* case alleging retaliation under Title VII is established when the plaintiff demonstrates that (1) he engaged in protected activity, (2) the employer subjected the plaintiff to adverse action or to conduct that had an adverse impact on him, and (3) there is a causal link between the protected activity and the adverse action. *See Thomas v. National Football League Players Ass'n,* 131 F.3d 198, 202 (D.C.Cir.1997); *Paquin v. Federal Nat'l Mortgage Ass'n,* 119 F.3d 23, 31 (D.C.Cir.1997); *Passer v. American Chemical Soc'y,* 935 F.2d 322, 331 (D.C.Cir. 1991); *Berger v. Iron Workers Reinforced Rodmen Local 201,* 843 F.2d 1395, 1423 (D.C.Cir.1988).[7] Plaintiff claims that he was retaliated against for filing his initial EEO complaint in 1993 regarding the hiring of Ms. Litton and Ms. Barbero.

### 1. Retaliation as Hiring Ms. Moore and Promoting Ms. Bettencourt

■ Plaintiff claims that defendant retaliated against him by hiring Ms. Moore and promoting Ms. Bettencourt after he filed his EEO complaint in 1993. The Court concludes that plaintiff cannot establish the second element of a *prima facie* case of retaliation with respect to this claim. Plaintiff cannot show that defendant's actions in hiring Ms. Moore or promoting Ms. Bettencourt had an adverse impact on him. While adverse personnel actions may include actions other than those having "a lasting effect on an employee's record," *Hayes v. Shalala,* 902 F.Supp. 259, 266 (D.D.C.1995);

see also *Passer v. American Chemical Soc'y,* 935 F.2d at 331; *Berger v. Iron Workers Reinforced Rodmen Local 201,* 843 F.2d at 1423, plaintiff's contention that the personnel actions of hiring/promotion with respect to Ms. Moore and Ms. Bettencourt adversely affected him or his employment is ludicrous. These personnel actions had absolutely nothing to do with plaintiff, and he was not denied a GS–13 level as a result. Employment at FYSB is not a zero sum game, and there is no conceivable way in which the actions taken with respect to Ms. Moore and Ms. Bettencourt could have adversely affected plaintiff's employment in any way.

### 2. Retaliation as Reduction of Job Assignments

■ Plaintiff claims that his work duties were retaliatorily reduced and that assignments from his two largest regions were taken away and given to Ms. Moore and Ms. Bettencourt after the FYSB experienced a reorganization in September of 1996. With respect to this claim of retaliation, the Court will assume that plaintiff has established a *prima facie* case. Plaintiff has failed, however, to show that the government's proffered legitimate, non-retaliatory reason for reducing plaintiff's workload was a pretext for discrimination.

Defendant maintains that Mr. Marshall's workload was reduced because of the reorganization of FYSB itself. In fact, it points out that everyone's assignments changed as a result of the reorganization:

---

to promote him. Plaintiff has never responded to the government's arguments that demonstrate that plaintiff cannot establish a *prima facie* case of discrimination on this basis, and the Court will grant summary judgment for defendant substantially for the reasons stated in the government's memorandum in support of its motion for summary judgment. Gov't Mem. in Support of Mot. for Summ. J. at 31–33. This matter is considered *infra* at 15, however, as a retaliation claim.

7. The Court notes that over time this Circuit has changed the formulation of the second element of the *prima facie* retaliation claim. In *Mitchell v. Baldrige,* 759 F.2d 80, 86 (D.C.Cir.1985), and *McKenna v. Weinberger,* 729 F.2d 783, 790 (D.C.Cir.1984), the plaintiff had to show that he or she was subject to adverse *employment* action

by his or her employer, not simply conduct that had an adverse impact on the plaintiff. With the subtle but conscious change in language reflected in more recent cases, this Circuit has rejected the Fifth Circuit's narrower view of the type of retaliatory conduct that is actionable under Title VII. *Compare Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 707–09 (5th Cir.1997) ("Title VII was designed to address ultimate employment decisions .... Ultimate employment decisions include acts such as hiring, granting leave, discharging, promoting, and compensating.") (internal quotation marks and citations omitted) *with Passer v. American Chemical Soc'y,* 935 F.2d at 331 ("[Title VII] does not limit its reach only to acts of retaliation that take the form of cognizable employment actions such as discharge, transfer or demotion.").

[FYSB] moved to a regional desk officer system in which an individual would be responsible for a specific region and all of the grants in that region rather than only for particular grant programs. For example, in the past, staff members in POD were responsible for recommendations for funding of the Runaway and Homeless Youth ... grants in the regions that were then funded and administered in the regions. The staff members in PSD were responsible for funding and administering the Youth Gang demonstration grants in the central office. As a result of the reorganization, one staff member would be responsible for all FYSB grants in a particular region.

Declaration of Terry Lewis ¶ 15. New assignments were made based upon each worker's expertise, and plaintiff maintained the region that emphasized the programs with which he had the most experience. *See id.* at ¶ 16.

Plaintiff responds to defendant's proffered legitimate non-retaliatory reason by claiming only that he was rated as a fully satisfactory employee for the three years he handled three regions by himself. Pl.'s Opp'n at 32. Plaintiff also points out that Ms. Lewis was aware of his EEO complaint while it was pending. The Court finds these facts wholly inadequate to establish a pretext for retaliation or from which a reasonable fact-finder could infer that the reorganization of FYSB was a subterfuge to cover up retaliatory actions taken against plaintiff. He was not treated differently from others as a result of the reorganization and has provided no facts from which one could infer that he was actually more qualified or had more expertise than other employees with respect to the programs that were reassigned to others from his former regions.

### 3. *Retaliation as Lower Performance Evaluations*

In 1994, plaintiff was rated at the "excellent" level, and in 1996, he was rated at the "fully successful" level.[8] At the same

time, Ms. Moore and Ms. Bettencourt received "outstanding" evaluations.

The defendant argues that plaintiff cannot establish the third element of a *prima facie* case on this claim of retaliation for 1994 because, by plaintiff's own admission, he had a good relationship with his supervisor at that time and that "there was no problem" with his 1994 rating. Def.'s Opp'n at 29; Marshall Dep. at 200. Plaintiff does not directly respond to this argument and emphasizes only that Ms. Moore and Ms. Bettencourt received higher performance ratings than he did and that a colleague (in a non-supervisory position) said that he was doing as well as anyone else at FYSB. Pl.'s Opp'n at 33. With respect to the 1994 performance evaluation, the Court therefore considers this issue conceded.

The defendant acknowledges that plaintiff has established a *prima facie* case with respect to the 1996 performance evaluation, Def.'s Mem. in Support of Mot. for Summ. J. at n.6, but proffers the following legitimate non-retaliatory reasons for rating plaintiff below the outstanding level in both 1994 and 1996:(1) since 1981 (except for 1994), plaintiff never received more than a fully successful rating, thus making the 1994 "excellent" rating an aberration; (2) in 1994, plaintiff was not performing at the outstanding level because his supervisor had to edit his work extensively, he failed to inform his supervisor about the status of his projects, he only volunteered for a few assignments and he had not worked on any projects that were above and beyond his normal duties; and (3) in 1996, plaintiff still exhibited the same problems as he did in 1994 and he also failed to stay abreast of relevant program information and produced outdated and incorrect responses to Congressional, Department and White House inquiries; thus, his performance had deteriorated since 1994. *Id.* at 29–31.

In response, plaintiff acknowledges that he did not do anything beyond what was required, did not volunteer for any assignments and did not develop any new initiatives.

---

**8.** The record is not clear as to why, but for some reason, plaintiff did not receive a performance rating in 1995.

Marshall Dep. at 124, 127. He argues, however, that Ms. Moore and Ms. Bettencourt received higher performance evaluation ratings than he did, that Ms. Moore and Ms. Bettencourt were also the same individuals who were reassigned certain of plaintiff's former regions during the 1997 reorganization, and that a fellow employee said that he was "doing as good a job as anyone" in FYSB. Pl.'s Opp'n at 33. Plaintiff's responses are inadequate to overcome the proffered legitimate non-retaliatory reasons for his performance ratings and to establish pretext. The fact that Ms. Moore and Ms. Bettencourt received higher ratings than plaintiff is not disputed, nor is the fact that they were assigned to some of plaintiff's former regions. The Court views these "arguments" as circular and unresponsive. Furthermore, the fact that another employee believed Mr. Marshall's job performance to be as good as anyone else at FYSB is not evidence, direct or circumstantial, sufficient to establish that the government's several legitimate reasons for plaintiff's 1996 performance evaluation are pretextual.

### 4. Retaliation as Pamela Johnson Reneging on Promise of Promotion

Plaintiff claims that when Pamela Johnson first became his supervisor she promised him that he would get a promotion within a year and that she later reneged on that promise after he complained of discrimination in 1993. Marshall Dep. at 130. Ms. Johnson denies that any promise was made and states that she had told all of her staff that she would review their performance plans after she had supervised them for a year. Declaration of Pamela A. Johnson ¶ 2.

Plaintiff's own deposition belies his claim that Ms. Johnson promised to "promote" him after one year: "And [s]he indicated, of her own volition, that, Ed, I want to supervise [you] for ... a year before I put you in for a promotion.... and she did indicate that after a year of supervising she would consider promoting me to the 13 level." Marshall Dep. at 131–32. What is evident from plaintiff's own description of the conversation he had with Ms. Johnson was that she *might*, after a year, *consider recommending* him for

a promotion. The Court cannot conclude that Ms. Johnson's failure to recommend Mr. Marshall for a promotion constituted conduct that had an adverse impact on Mr. Marshall when any plans regarding the recommendation of plaintiff for a promotion were so contingent, as plaintiff himself acknowledged in his deposition. It is undisputed that Ms. Johnson told all members of her staff that she would review their performance plans after a year, but this fact is insufficient to establish that she made a promise to plaintiff (or to anyone else) which she then broke and that this constituted an act of retaliation. Plaintiff has failed to establish a *prima facie* case with respect to his claim of retaliation on the basis of Ms. Johnson's alleged promise to promote him.

### 5. Retaliation/Discrimination as an Investigation into Plaintiff's Behavior

At some point, James Harrell, Deputy Commissioner of ACF, investigated plaintiff's behavior because Ms. Bettencourt complained that Mr. Marshall was harassing her and because Ms. Johnson claimed that Mr. Marshall had threatened her. The defendant maintains that plaintiff cannot establish a *prima facie* case of retaliation on this basis because he cannot establish a causal connection between the filing of his EEO complaint and Mr. Harrell's investigation. Plaintiff argues, however, that the causal connection between his EEO activity and Mr. Harrell's investigation into his conduct is the retaliatory animus of Terry Lewis, the person who plaintiff alleges was responsible for orchestrating the entire inquiry. Because there seems to exist some modicum of evidence in the record that Ms. Lewis may have had some influence on Mr. Harrell's decision to investigate plaintiff's conduct, *see* Declaration of James Harrell ¶ 2, the Court will assume for purposes of this analysis that plaintiff has established a *prima facie* case with respect to this claim.

The Court finds, however, that plaintiff has failed to establish that the defendant's proffered legitimate non-retaliatory reason for investigating plaintiff's conduct is pretextual. Plaintiff does not dispute that Ms. Bettencourt and Ms. Johnson did in fact make

allegations of plaintiff's alleged inappropriate conduct towards them. Mr. Harrell had no choice but to investigate the allegations once they were made, especially because the Group Manager for the Labor and Employee Relations Group for the Office of Human Resource Management, Gwendolynne O'Connell, directed Mr. Harrell to do so. Declaration of Gwendolynne O'Connell ¶ 4. The very fact that these allegations were made justified defendant's response, and plaintiff has utterly failed to establish that defendant's reasons for investigating plaintiff's conduct were pretextual.[9]

### 6. Retaliation as Transfer out of FYSB

 Plaintiff also claims that defendant discriminated against him when Mr. Harrell transferred him to another office after the 1997 reorganization of FYSB. The Court concludes that plaintiff is unable to establish a causal connection between his transfer and his prior EEO activity. Plaintiff therefore has failed to establish a *prima facie* case with respect to this claim.

Plaintiff merely contends that the investigation into his conduct, which plaintiff claims was orchestrated by Terry Lewis, was the event that ultimately led Mr. Harrell to transfer plaintiff to another office. Because it is undisputed that Mr. Harrell ultimately made the decision to transfer plaintiff to another office, however, and because the alleged link between Mr. Harrell's decision to transfer plaintiff and the alleged retaliatory animus of Terry Lewis is so attenuated, the Court finds that plaintiff cannot establish a causal connection between his EEO activity and his transfer.

In addition, the Court finds that plaintiff is unable to establish that the government's proffered legitimate non-retaliatory reason for transferring him to another office is pretextual. As the government points out,

plaintiff has never disputed that Mr. Harrell transferred him because of plaintiff's own misgivings about the reorganization of FYSB. *See* Declaration of James A. Harrell ¶ 6; Declaration of Terry Lewis ¶ 20. Judgment will be entered for the defendant on plaintiff's retaliation claims.

An Order and Judgment consistent with this Opinion shall be issued this same day.

SO ORDERED.

### ORDER AND JUDGMENT

These consolidated cases are before the Court on defendant's motion for summary judgment. Upon consideration of defendant's motion and its memorandum of points and authorities in support of the motion, plaintiff's opposition and defendant's reply, and the arguments presented by counsel in open Court, and for the reasons stated in the Opinion issued this same day, it is hereby

ORDERED that defendant's motion for summary judgment is GRANTED; it is

FURTHER ORDERED that JUDGMENT is ENTERED for defendant in Civil Action No. 96–2103 and in Civil Action No. 97–0266; and it is

FURTHER ORDERED that the Clerk of the Court shall remove these two consolidated cases from the Court's docket.

SO ORDERED.

---

**9.** The Court finds that defendant's response to the alleged actions of Mr. Marshall (even though he was not a supervisor) was most appropriate, particularly in light of the Supreme Court's recent decisions in *Burlington Industries, Inc. v. Ellerth,* —— U.S. ——, ——, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998), and *Faragher v. Boca Raton,* —— U.S. ——, —— —— ——, 118 S.Ct. 2275, 2292–93, 141 L.Ed.2d 662 (1998) (creating affir-

mative defense against certain types of harassment when employer "exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and ... [when] plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise").