Duhaime v. SSA                    CV-09-29-PB    11/20/09  P

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW HAMPSHIRE

Doreen Duhaime


          v.                              Civil No. 09-cv-29-PB
                                          Opinion No. 2009 DNH 183P

Michael Astrue, Commissioner
Social Security Administration


## REPORT AND RECOMMENDATION


        Plaintiff Doreen Duhaime appeals the final decision of

defendant Social Security Administration ("SSA") to discontinue

disability insurance benefits she had been receiving because of

depression and alcohol abuse in remission.  On April 28, 2005,

the SSA notified plaintiff that her benefits had ceased effective

September 2004, based on a determination that her medical

condition had improved sufficiently to enable her to return to

her past work.  Plaintiff appealed that decision, received a

hearing before an administrative law judge ("ALJ"), and in March

2007 was again denied continued benefits.  The ALJ determined

plaintiff's benefits should have ceased on August 15, 2006,

however, rather than in September 2004.  After the Appeals

Council denied further review, plaintiff commenced this action.

Plaintiff now seeks a remand, claiming the ALJ's decision was based on factual and legal errors. For the reasons set forth below, I recommend that plaintiff's motion (document no. 9) be granted and the matter be remanded for further consideration.

## Discussion

### 1. Statement of Uncontested Facts.

Pursuant to this court's local rules, see United States District Court for the District of New Hampshire Rule 9.1(d), the parties filed a joint statement of facts (document no. 11) which are part of the record and which I have reviewed. Only those facts relevant to the disposition of this matter are discussed below, as needed.

### 2. Standard of Review

An individual seeking social security benefits has a right to judicial review of a decision denying the application. See 42 U.S.C. § 405(g) (Supp. 2008). The court is empowered to affirm, modify, reverse or remand the decision of the Commissioner, based upon the pleadings and transcript of the record. See id. The factual findings of the Commissioner shall be conclusive, as long as they are supported by "substantial evidence" in the record. See Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991)

2

(quoting 42 U.S.C. § 405(g)). "Substantial evidence" is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Currier v. Sec'y of HHS, 612 F.2d 594, 597 (1st Cir. 1980). The Commissioner is responsible for resolving issues of credibility and drawing inferences from the evidence in the record. See Rodriquez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981) (reviewing court must defer to the judgment of the Commissioner). The Court does not need to agree with the Commissioner's decision but only needs to determine whether it is supported by substantial evidence. See id.

A final decision denying benefits must be upheld unless it is based on a legal or factual error. See Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (citing Sullivan v. Hudson, 490 U.S. 877, 885 (1989)). If the ALJ made a legal or factual error, the decision may either be reversed or remanded to consider new, material evidence or to apply the correct legal standard. See 42 U.S.C. § 405(g); see also Martin v. Astrue, No. C.A. 07-388A, 2008 WL 5111918, *2-3 (D.R.I. Dec. 2, 2008) (citing

3

authority about when to remand and when to reverse); Evangelista v. Sec'y HHS, 826 F.2d 136, 139 (1st Cir. 1987) (describing the newness/materiality and the good cause showings that justify a remand).

## 3. Analysis

Benefits awards like plaintiff received here are subject to periodic review to determine whether continuing benefits are justified. See Mathews v. Eldridge, 424 U.S. 319, 336 (1976) (explaining that a claimant has a "continuing burden" to demonstrate his disability); see also 42 U.S.C. § 423(f) (governing termination of benefits); 20 C.F.R. §§ 404.1589 & 404.1594(a) (outlining disability review process). That periodic review looks at a claimant's medical condition to determine whether it has improved and, if so, whether that improvement positively affects the claimant's ability to work. See 42 U.S.C. § 423(f); see also 20 C.F.R. § 404.1594; Rice v. Chater, 86 F.3d 1, 2 (1st Cir. 1996); Shepherd v. Apfel, 184 F.3d 1196, 1199 (10th Cir. 1999) (discussing the medical improvement standard). The regulations provide:

> A recipient of benefits . . . may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has

4

ceased, does not exist, or is not disabling only if such a finding is supported by -

(1) substantial evidence which demonstrates that:

(A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and

(B) the individual is now able to engage in substantial gainful activity . . ..

42 U.S.C. § 423(f). Accordingly, the initial, critical question is whether plaintiff's condition has improved since the prior award of disability benefits, before the questions are considered of whether the improved condition meets the listing requirements for disability and how that affects the ability to do work. See Rice, 86 F.3d at 2 n.2 (explaining how meeting or failing to meet a listing goes to the question of ability to work which is not considered unless and until a medical improvement is first established); see also Cogswell v. Barnhart, No. Civ. 04-171-P-S, 2005 WL 767171, *1-2 (D. Me. Mar. 14, 2005) (citing authority to explain the need for actual physical improvement before ability to work is considered).

Plaintiff argues the ALJ erred by (1) assessing her continuing disability status based on the incorrect age of 30

5

years old when she was 51 years old at the February 2007 hearing; (2) discounting the opinion of her treating physician, Dr. Eric Knight; and (3) finding medical improvement despite the lack of substantial evidence to support that conclusion. After carefully reviewing the briefs and the record, I am persuaded that defendant has not carried its burden of proving the conditions which previously rendered plaintiff disabled have ameliorated, see 20 C.F.R. § 404.1594(b)(2)-(5), and that plaintiff has identified sufficient flaws in the ALJ's analysis to justify a remand to reconsider the evidence. I begin with the third argument, which subsumes the second, because the first argument concerning plaintiff's age is relevant to her ability to be substantially gainfully employed, which vocational assessment is not considered unless medical improvement has first been established. See 20 C.F.R. §§ 404.1594(a) & 404.1563.

(a) Medical Improvement

Mental impairments are reviewed according to the rules set forth in the regulations, which require the ALJ to follow a special technique to establish the existence of an impairment and then to determine its severity. See 20 C.F.R. § § 404.1520 (providing the five step disability evaluation process), §

6

404.1520a (governing mental disability in particular) &

§ 404.1594 (outlining steps to follow for continuing disability

review). The regulations require first that medical evidence

demonstrate the existence of an impairment, before the assessment

progresses to determining its severity and resulting functional

limitation. See id. § 404.1520a(b).[1] Similarly, at the periodic

review stage, the ALJ must first determine if there has been any

medical improvement in the impairment before progressing to the

analysis of any resulting functional limitations. Id. §

404.1594(a) & (b)(1).

The regulations define "medical improvement" as "'any

decrease in the medical severity' of an impairment, and any such

decrease 'must be based on changes in the symptoms, signs and/or

laboratory findings' associated with the claimant's impairment."

Rice, 86 F.3d at 2 (quoting 20 C.F.R. § 404.1594(b)(1)). To

determine whether plaintiff had medically improved, the ALJ was

---

[1]Once a medically determinable mental impairment has been established, its severity is determined by referring to a set of "Listings." See id. §§ 404.1520(a)(4)(iii)& 404.1525; see also 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1(the "Listings"), § 12.00. The Listings set forth medical findings, referred to as "Paragraph A" criteria, and impairment-related functional limitations, referred to as "Paragraph B" criteria. See id. § 12.00A. There are additional functional criteria set forth in Paragraph C, which become relevant only if the Paragraph B criteria are not satisfied.

7

required to compare the medical evidence from June 1999, when she was initially found disabled, to the medical evidence current at the time of his review, to see if there were any "*changed symptoms, signs and laboratory findings* [which] are the only relevant indicia of medical improvement under the regulations." Id. (reversing for legal error because ALJ found claimant no longer met a listing but failed to compare the medical evidence (emphasis in original)); see also 20 C.F.R. § 404.1594(b)(7) (defining point of comparison) & § 404.1594(c) (providing steps to follow to determine medical improvement). My review of the record indicates the ALJ did not make the requisite comparison.

**(i) The ALJ's Findings**

Without citing any diagnostic tests, professional evaluations or other evidence that could be understood as depicting a symptom, sign or laboratory finding, the ALJ found:

> The record shows no continuing limitations in basic work activities from her alcohol abuse. As for her depression, the record shows improvement in the criteria in Section 12.04B of the Listings, as discussed below.

Certified Copy of the Record ("CR") at 16. The direct cite to subsection 12.04B, which describes functional limitations, unambiguously reveals the error in the ALJ's analysis, which

8

assessed plaintiff's "medical improvement" based on her

functional limitations without first determining whether there

were documented changes of any improved medical signs or

symptoms.  The ALJ explained plaintiff's medical improvement as:

> I do not find more than mild limitations as
> of August 15, 2006 in the claimant's performance
> of activities of daily living, her social
> functioning and her concentration, persistence
> and pace to complete tasks.

Id. at 19.  These are the Listings' category B criteria that are

not to be assessed unless and until medical improvement in signs,

symptoms and laboratory findings has been documented.  This focus

on whether plaintiff met the Listings criteria for functional

limitation constitutes reversible error.  See Rice, 86 F.3d at 2-

3 & n.2 (reversing because ALJ erroneously focused on whether the

claimant's medical condition continued to meet the Listings

rather than focusing on whether laboratory findings demonstrated

improvement).

The law clearly requires that medical improvement be

established first before the subordinate issue of whether that

improvement is related to functional ability to work is

addressed.  See id. ("The question whether a prior listing

continues to be met plays at best a subordinate role in

determining medical improvement and is not determinative."). Although the ALJ concluded plaintiff had severe impairments in the form of her depression[2] and her fibromyalgia, see CR at 21, he still determined that "the medical evidence establishes that there has been improvement in the claimant's medical impairment since August 15, 2006 which is related to the ability to work," id., without supporting that conclusion with any record citation. It is unclear what medical evidence he refers to in making that conclusion.

### (ii)  The Medical Evidence

The regulations are specific about what types of medical evidence constitute "symptoms, signs and laboratory findings." See 20 C.F.R. §§ 404.1508 (describing need for medical evidence to show impairment) & 404.1528 (detailing examples of signs and laboratory findings).  In particular, evidentiary proof must be more than a claimant's own description of his or her impairment, see id., and must include:

---

[2]The ALJ found "the impairment to remain a severe one as she is expected to be vulnerable to one or two episodes of decompensation when faced with a lot of stress," yet still concluded there was  "medical improvement in the claimant's depression."  CR at 19.  The ALJ provides no explanation for this inherent contradiction.

10

> Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated.. . . Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests.

Id. Both initially and on reconsideration, a "special technique" must be followed to evaluate the mental disability, see id. § 404.1520a(b), which then must be documented in the decision to show what evidence medically establishes the mental disorder. See id. § 404.1520a(e). Nothing in the ALJ's decision indicates that he followed the "special technique" required by the regulations to determine whether plaintiff's mental disability was continuing. See id. & § 404.1520a(b).

At the comparison point of decision, June 2, 1999, plaintiff was found to be suffering from alcohol abuse and depression, as described in the regulations under Listing 12.04 for "Affective Disorders." See CR at 23 (10/5/01 disability determination report with onset date of 6/2/99). At that time, Dr. Craig A.

11

Dailey found plaintiff suffered from an affective disorder, anxiety-related disorder, and substance addition disorder. See CR at 118 (citing Listing §§ 12.04, 12.06 and 12.09). Dr. Dailey identified plaintiff as suffering from anhedonia, sleep disturbance, decreased energy, difficulty concentrating and suicidal thoughts. CR at 121. He also found plaintiff to be suffering from recurrent severe panic attacks and alcohol dependance in partial remission. Id. at 123 & 126. Dr. Dailey based his findings on the medical records from Dr. Benton, who treated plaintiff for a long time, and the Elliott Hospital, where she was hospitalized after her second suicide attempt. Id. at 130. He also noted that plaintiff had been treated at Hampstead Hospital for acute detoxification for her alcohol dependence, and was receiving medication and counseling as part of her treatment. Id. Based on this medical evidence, Dr. Dailey concluded plaintiff had a severe mental disability beginning June 2, 1999 and continuing through his October 2001 evaluation. Id. at 118-131 (plaintiff's "Psychiatric Review Technique" form).

By comparison, at the February 2007 hearing, the ALJ found that plaintiff's mental disorders were not disabling as of August

12

15, 2006. In support of that conclusion, the ALJ relied heavily on notes from Dr. William E. Evans, Jr., who saw plaintiff a few times between August 2005 and October 2006 apparently at the request of Medicare/Medicaid. At the initial August 2005 visit, Dr. Evans completed a "Psychiatric Evaluation/Consultation" of plaintiff. See CR at 383-84. Dr. Evans assessed plaintiff as follows:

Axis I:     Social phobia, provisional.
            Alcoholism in remission.
            Rule out pre-morbid learning disabilities.

Axis II:    Personality disorder, NOS, provisional.
            Rule out Borderline Personality Disorder.

Axis III:   Fibromyalgia and status post hysterectomy.
            Methadone dependent.

Axis IV:    Deferred.

Axis V:     60.

Id. at 384. He did not complete another assessment of plaintiff, and the record only contains notes from the other visits he had with plaintiff. Id. at 361-65. The notes reflect some improvement ("no symptoms of suicidality or serious depression or anxiety," id. at 365), but some continuing problems (sleep difficulties, methadone dependent and drug seeking, see id.).[3]

_____

[3]Significantly, Dr. Evans also noted plaintiff's as "bright and euthymic," CR at 363, and plaintiff reported sleeping only a

13

This evidence is at best mixed, and appears to be consistent with plaintiff's pattern of "waxing and waning" without sustained improvement which the ALJ found prior to August 15, 2006. See CR at 17.

Dr. Evans referred plaintiff for counseling with John Colby, who completed a "Consumer Intake Assessment" in August 2005 that reflected her history with drug and alcohol abuse and her self-reported problems with social phobias, depression and anxiety. See id. at 386-96. Mr. Colby's "mental status exam" opinion was fairly good, stating that plaintiff was cooperative and appropriate throughout the interview, that her emotions, activity level and speech were normal, that her judgment was sound, that there was no apparent homicidal or suicidal ideation, and that her insight was keen and she was oriented in person, place and time. See id. at 386. Despite this report, plaintiff went to Colby for psychotherapy for her flat affect, social phobia, and chemical dependence problems. See id. at 392. In July and August 2006, Colby noted that plaintiff continued to need supportive psychotherapy, that included "reality-based cognitive

few hours a day without feeling tired, CR at 419, which could be considered medical signs for manic syndrome, a type of affective disorder. See Listing 12.04(A)(2).

14

messages that promote increased adaptive action" and "explor[ing] substance abuse and recovery." Id. at 400-01. One of Colby's last treatment notes, from September 2006, indicates plaintiff reported feeling "full of life" but still needed supportive psychotherapy with a treatment goal of "exploring her medication management and discussing relapse prevention strategies." Id. at 366. Like Dr. Evans' opinion, Mr. Colby's assessment was of mixed improvement, that could fairly be understood as cautiously optimistic.

Aside from these treatment notes, there is no other medical evidence cited in support of the ALJ's disability cessation determination. Neither Dr. Evans nor Mr. Colby completed a Psychiatric Review Technique form or similar psychiatric profile evaluation form that could be understood as a laboratory finding or symptom, either in August 2006 or at any time after the initial August 2005 evaluation.[4] Notes from both evaluators stop in October 2006. The ALJ appears to have relied heavily on

_____

[4]There is a one other Psychiatric Review Technique form, dated July 22, 2004, when plaintiff was determined to still be disabled based on her affective disorder. See CR at 188D-188H. Because is was done two years before the critical August 2006 date, it is irrelevant to plaintiff's disability status at issue now other than perhaps to illuminate the dearth of medical evidence supporting the ALJ's finding.

15

plaintiff's self-report to Dr. Evans in August 2006 that she liked her job, was happy, and was decreasing her methadone dosage. CR at 16. He cites several behavioral examples of her improvement, including dining in restaurants, remaining upbeat and euthymic, and abstaining from alcohol consumption, id., and concluded this "evidence is consistent with very significant improvement in the claimant's depression since the comparison point of decision." Id. at 17. This reliance on plaintiff's own account of her improvement is undermined by the ALJ also having found that plaintiff was not credible. See id. at 18 & 21 (discrediting testimony about her alcohol use and her pain).

Without more medical evidence of improvement, I cannot find that the ALJ's decision is based on substantial evidence. He was required to assess specific symptoms of affective disorders, such as: sleep disturbance, energy and activity levels, ability to concentrate, feelings of self-worth, id. at 121, unpredictable onset of anxiety or panic, id. at 123, and substance dependence, id. at 126. See 20 C.F.R. § 1520a(e) (requiring the ALJ to document application of the mental disability determination technique); see also Listings § 12.04(A) (setting forth medical criteria to show affective disorders); Santiago v. Barnhart, 386

16

F. Supp. 2d 20, 23 (D.P.R. 2005) (requiring decision to actually compare cited evidence of prior and current medical conditions to show improvement). Though the evidence showed plaintiff was no longer suicidal and no longer abused alcohol, it also showed that she continued to be anxious in a variety of social settings, CR at 19 & 415-16, and continued to suffer from addiction problems.[5] See e.g. CR at 365-66 (treatment notes focusing on plaintiff's drug dependency), 412 & 416-17 (plaintiff's testimony about her drug addictions, and therapy). The ALJ concluded plaintiff continued to be severely impaired by depression, CR at 21 (finding no. 3) and yet still determined, with no record citation to support the finding, that her depression had medically improved. See id. These conflicting conclusions simply cannot be understood as substantial evidence.

Significantly, the ALJ appeared to have given no weight to Dr. Eric Knight's medical opinion about her impairments, which

_____

[5]The ALJ specifically found plaintiff not to be credible about her use of alcohol, CR at 18, yet also decided to terminate her benefits in part because of her testimony that her alcohol did not impact her ability to work. See CR at 19. This selective finding of credibility is inherently contradictory and erodes the evidentiary basis of his decision.

17

also constitutes legal error.[6]  The regulations require that all medical opinions be evaluated, see 20 C.F.R. § 404.1527(b), and that treating physician's opinions be weighed more heavily than consulting or examining physician's opinions because treating physicians are "most able to provide a detailed, longitudinal picture of your medical impairment(s)."  See id. § 404.1527(d); see also Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994) (explaining weight to be accorded various medical opinions). Since Dr. Knight was plaintiff's primary care physician whose treatment relationship with plaintiff was substantially longer than either Dr. Evans or Mr. Colby, his opinion should have been considered, if not more heavily weighed, in the continuing disability evaluation.  See id.

Dr. Knight stated in his February 2007 evaluation of plaintiff that her "Neuropsychiatric issues - interpersonal interactions and crying with stress, [and] difficulties due to depression, possible bipolar disorder" were other medical

---

[6]The ALJ relies on Dr. Knight's opinion only in the context of plaintiff's residual functional capacity ("RFC").  See CR at 19.  Dr. Knight completed a "Medical Assessment of Ability to do Work-Related Activities (Physical)" on February 7, 2007, see id. at 355-59, determining plaintiff had several RFC limitations which the ALJ did not accept.  See id. at 19.  The record does not contain any other physical or mental RFC assessment.

18

findings that supported his assessment that plaintiff would likely miss more than four days of work per month.  Id. at 359.  Dr. Knight opined that plaintiff:

> has been a patient in our office since 7/12/2004.
> At that time she reported a history of Major
> Depression with a question of Bipolar Disorder.
> She also presented a history of Rheumatoid
> Arthritis, Fibromyalgia and Melanoma.  Since
> that time new chronic problems and diagnoses
> have included Hypothyroidism, Obstructive Sleep
> Apnea and Hypercolesterolemia.
>
> While I am unable to comment on any changes prior
> to July 2004, I can confidently state that Ms.
> Duhaime has not had any significant improvement
> in her function, including potential ability to
> maintain gainful employment, since I first met
> her.  If anything it appears that her capacity
> has decreased moderately over this period of time.

Id. at 360.  Though this assessment is not inconsistent with the other substantial evidence in the record, the ALJ appears not to have given Dr. Knight's opinion any weight when he concluded plaintiff had medically improved.  Because his opinion was not contradicted by other evidence in the record, the decision not to factor Dr. Knight's opinion into the analysis constitutes legal error.  See 20 C.F.R. § 404.1527(d)(2)-(6) (explaining how to weigh opinions of treating physicians that are not inconsistent with other substantial evidence); see also Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ's findings of fact . . .

19

are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."); cf. Keating v . Sec'y of HHS, 848 F.2d 271, 276 (1st Cir. 1988) (rejecting treating physician's opinion when contradicted by other medical evidence).

The ALJ's failure to obtain medical evidence demonstrating medical improvement and his improper evaluation of Dr. Knight's opinion constituted legal errors. See Nguyen, 172 F.3d at 35 (reversing for legal error where ALJ's opinion was based on a "dearth of evidence" which ignored uncontroverted evidence from treating physician). The record does not contain substantial evidence that plaintiff's mental impairments have medically improved, and it was error for the ALJ to terminate her disability benefits without the requisite medical evidence of improvement. As a result, a remand is necessary to assess plaintiff's continuing disability in accordance with the regulations.

### (b)  Work-Related Factors

While the lack of medical evidence to support the ALJ's decision is a sufficient basis on which to remand this action, a few additional issues bear noting.

First, the ALJ erroneously found that plaintiff was a 30 year old, "younger individual" on August 15, 2006, the cessation date for her disability benefits. See CR at 21 (finding no. 9).[7] In fact, plaintiff was 50 years old on August 15, 2006, and was 51 years old at the February 12, 2007 hearing. She is a "person closely approaching advanced age," see 20 C.F.R. § 1563(d), which the regulations dictate may seriously affect an ability to adjust to other work when combined with a severe impairment and limited work experience. Id.

Second, the record reflects that plaintiff also suffers from fibromyalgia and rheumatoid arthritis. When a continuation of benefits is under review, all current impairments must be considered in addition to the previously determined impairment, to see what plaintiff's functional capacity to work is. See id. § 404.1594(b)(5). Defendant carries the burden of showing that plaintiff can engage in substantial gainful activity, considering

_____

[7]Defendant argues the ALJ knew she was really older, since he stated her birthday correctly, see CR at 15 & 409, and saw her at the hearing. Regardless of whether the ALJ's reference to her age as 30 instead of 50 was a typographical error or an actual mistake, the description of her as a "younger individual (20 CFR § 1563)," CR at 21, strongly suggests his analysis assumed she was in fact 30 years old. On remand, plaintiff's correct age can be factored into the vocational analysis if the disability review progresses that far.

21

all of her impairments present at the time of the review.  Id.
Accordingly, the AJL must factor the impact of plaintiff's pain
and other limitations caused by her fibromyalgia and her
rheumatoid arthritis into his assessment of her continuing
disability status.  See id. & § 404.1594(b)(6); see also Avery v.
Sec'y of HHS, 797 F.2d 19, 28-29 (1st Cir. 1986) (identifying
factors relevant to the analysis of disabling pain).

Finally, the ALJ should not have relied solely on the Grid
to determine plaintiff's disability.  See CR at 21 (finding no.
12).  As discussed above, that reliance was premised on factual
errors, including plaintiff's incorrect age and an incomplete
evaluation of her impairments.  "The Grid is based on a
claimant's exertional capacity and can only be applied when
claimant's non-exertional limitations do not significantly impair
claimant's ability to perform at a given exertional level."  Rose
v. Shalala, 34 F.3d 13, 19 (1st Cir. 1994).  Without speculating
about what conclusion will be found following a proper evaluation
of plaintiff's impairments, "an expert's RFC evaluation is
ordinarily essential unless the extent of functional loss, and
its effect on job performance, would be apparent even to a lay
person."  See Manso-Pizarro v. Sec'y HHS, 76 F.3d 15, 17 (1st

22

Cir. 1996). On remand, if medical evidence establishes plaintiff has improved, vocational expert testimony regarding plaintiff's limitations, including both her pain and her alcohol abuse in remission, with properly framed hypothetical questions about her RFC considering her particular limitations, may be warranted. See Rose, 34 F.3d at 19 (instructing that reliance on the Grid is not dispositive where non-exertional limitations are present); see also Nguyen, 172 F.3d at 36 (reversing in part for reliance on the Grid which does not factor in pain); Arocho v. Sec'y HHS, 670 F.2d 374, 375 (1st Cir. 1982) (requiring ALJ to frame the hypothetical question to correspond to the medical conclusions so the vocational expert's answer is relevant). In other words, there must be substantial evidence to support the assumptions the ALJ is making when asking the hypothetical question and upon which the vocational expert bases his opinion. See id.; see also Searles v. Apfel, No. Civ. 99-548-B, 2000 WL 1745142, *7 (D.N.H. Oct. 13, 2000) (requiring ALJ to resolve ambiguities and to frame the hypothetical to accurately reflect claimant's limitations); Jolly v. Barnhart, 465 F. Supp. 2d 498, 504-05 (D.S.C. 2006) (reversing where vocational expert's hypothetical question failed to consider several parameters, including closely approaching

advanced age).

Conclusion

For the reasons set forth above, I find that the ALJ's decision is not supported by substantial evidence and recommend, therefore, that plaintiff's motion for remand (document no. 9) be granted and defendant's motion to affirm (document no. 10) be denied. See Nguyen, 172 F.3d at 35. I recommend this case be remanded for further consideration consistent with the analysis set forth herein. See 42 U.S.C. § 405(g).

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge


Date:  November 30, 2009

24

cc:     Jonathan P. Baird, Esq.
        T. David Plourde, Esq.