**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 14 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JERRY D. LAWSON,

       Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

       Defendant-Appellee.

No. 98-7115
(D.C. No. CV-97-85-S)
(E.D. Okla.)

**ORDER AND JUDGMENT** *

Before **BALDOCK** , **BARRETT** , and **McKAY,** Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Claimant Jerry D. Lawson appeals from the district court's order affirming the decision of the Commissioner of Social Security. In that decision, the Commissioner determined that claimant was entitled to a closed period of disability benefits under Title II of the Social Security Act beginning June 4, 1990 and ending September 4, 1994. *See* 42 U.S.C. § 423. We exercise jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and affirm in part and reverse in part.

## I. Legal standards

Our review is limited to determining whether the Commissioner's decision is supported by substantial evidence on the whole record and comports with relevant legal standards. *See Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800-01 (10th Cir. 1991). Claims for disability benefits are evaluated according to the five-step sequential process set forth in 20 C.F.R. § 404.1520. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir.1988). At step four of the process, "the claimant must show that the impairment prevents [him] from performing work he has performed in the past." *Id.* at 751 (quotation omitted and alteration in original). If the claimant is successful at this stage, then the claimant "has met his burden of proof, establishing a prima facie case of disability. The evaluation process thus proceeds to the fifth and final step: determining whether the claimant has the residual functional capacity (RFC) 'to

-2-

perform other work in the national economy in view of his age, education, and work experience.'"  *Id.* (footnote omitted).

## II.  Relevant facts

On June 4, 1990, claimant fell approximately eighteen feet from a rock crushing machine, causing displaced fractures of both heels and ankles.  In an open reduction, pins were surgically inserted in both heel and ankle areas.  The surgeries were not totally successful, and claimant was left with significant ankle joint immobility and painful ambulation.  The injuries resulted in an "ambulation difficulty," Appellant's App. Vol. II at 179, which one of his treating physicians described as a "waddling bilaterally antalgic gait." *Id.* at 219.  This change in gait in turn caused chronic back pain, *see id.* at 180, which was first reported in February 1991, *see id.* at 172, and for which claimant received physical therapy from July 1992 through March 1993, *see id.* at 192-196.  X-rays of his back taken in 1993 revealed degenerative changes and scoliosis, but an MRI was "within normal limits." *Id.* at 179-180.  Claimant claimed that his back discomfort was aggravated by sitting, crossing his legs, bending, or walking. *See id.* at 178.

In March 1993, his treating physician stated that claimant was still totally impaired and needed further surgery on his feet to help his back problems caused by the abnormal gait. *See id.* at 244.  In July 1993, claimant underwent a second surgery to fuse the bones in his left ankle.  By March 28, 1994, claimant's

surgical fusion in his left foot and ankle still had not successfully healed.  *See id.*
at 256.  After his last follow-up examination on September 2, 1994, claimant's
treating physician stated that the fusion "appear[ed]" to have healed into what he
"th[ought]" was a solid fusion, and that he thought the heel joint had also healed,
so he did not schedule a follow-up appointment.  *Id.* at 257.  He noted that
claimant had continuing diffuse tenderness in his ankle and complained of
continued swelling and pain and stated that claimant had a 34% permanent partial
impairment of each foot.  *See id.*  The record reflects that because the surgery had
not afforded the relief from pain he had hoped for, claimant elected not to have
similar surgery on the right foot.  *See id.* at 257, 262.

At the hearing on October 18, 1994, claimant testified that he could walk at
the most for two blocks, that he could stand for only five to ten minutes at a time,
and that he could not sit in one place for more than thirty minutes because his
ankles would start swelling.  *See id.* at 46-47.  He had used a cane for assistance
or balance since he regained his ability to walk.  *See id.* at 46, 198.  He testified
that he still had back problems, *see id.* at 48, and that he could not repeatedly lift
and carry even a gallon of milk, *see id.* at 49.  He said he spent most of the time
in a recliner or laying on the couch.  *See id.* at 53.  He had tried cross-country
truck driving for nine days in July 1994 and again for ten days in September 1994,
but both times his wife had to drive out of state to get him because his "feet were

swelling up, and I was hurting so bad, I had to come home." *Id.* at 50. Although claimant completed a vocational computer technician training course in 1992, he told the specialist to whom he was referred for back problems in 1993 that he did not think he would be able to do the work because of the lifting requirements. *See id.* at 179. The vocational expert testified that computer technician jobs are medium-strength jobs because they require computer lifting and carrying. *See id.* at 71.

The medical record contains no medical opinions as to claimant's abilities to sit, stand, walk, or carry weight, although Dr. Dougherty, a consulting physician for the Disability Determination Services for the State of Oklahoma reported in 1993 (just before claimant's last surgery) that claimant stated he could "stand for 30 minutes, sit for 2 hours, lift 10 pounds of weight, and walk for 1 block." *Id.* at 198.

Citing to the September 2, 1994 report by claimant's treating physician, the administrative law judge ("ALJ") said that the physician stated that claimant had "reached the point that he would be able to return to some work activity in the light and sedentary range provided that he would not require [sic] to be on his feet more than 2 hours in an 8-hour workday." *Id.* at 25. He concluded that "claimant

would be restricted according to the credible evidence to a job where [standing][1] would not exceed more than two hours in an eight-hour workday, where he would not be required to lift [in] excess of 20 pounds and carry in excess of 10 pounds or lift and/or carry frequently in excess of 10 pounds." *Id.* at 26. The ALJ found that between the date of his accident and September 4, 1994, claimant was "functioning below the sedentary level" of capacity to do work and was eligible for disability benefits, but that after September 4, 1994 he "regained the capacity to return to his past relevant work as a dispatcher." *Id.* at 25, 27.

## III. Discussion

Two issues are presented for review. Claimant contends that: (1) the ALJ erred in finding that he can return to his past relevant work without making the proper findings to support such a conclusion and (2) the findings regarding claimant's credibility are not based on substantial evidence. As part of the first issue, claimant argues that the ALJ failed to evaluate his condition pursuant to the point of comparison method required by 20 C.F.R. § 404.1594(b)(7). Although we note that recent case law[2] imposes a duty upon ALJs to comply with § 404.1594(b)(7) when determining whether to award benefits for a closed period,

---

[1] We agree with respondent that there is a scrivener's error in the ALJ's decision and that "sitting" should have been "standing".

[2] We commend respondent for so quickly bringing this case to the attention of this panel.

*see Shepherd v. Apfel*, No. 98-5115, 1999 WL 498260 at \*3 (10th Cir. July 15, 1999) (to be reported at 184 F.3d 1196), because claimant failed to raise that argument either on appeal to the Appeals Council, *see* Appellant's App. Vol. II at 8-10, or to the district court below, *see id.* Vol. I at 13-15, we will not address it here. *See Berna v. Chater*, 101 F.3d 631, 632-33 (10th Cir. 1996). We will address the argument made below that substantial evidence does not support the Commissioner's determination that claimant regained the ability to perform his past relevant work after September 4, 1994.

The district court adopted the magistrate judge's proposed findings and conclusions that affirmed the award for a closed period. We agree that the medical record supports a finding of disability between June 4, 1990 and September 4, 1994. The district court did not comment, however, on whether the record contains any evidence to support the conclusion that claimant's disabling condition had improved such that, after September 4, 1994, claimant *regained* the RFC to perform sedentary work and could return to his former job as a dispatcher. After a careful review of the evidence, we conclude that it does not.

The September 4, 1994 letter from claimant's treating physician cited by the ALJ as medical confirmation that claimant could return to light or sedentary work after that date does not state what the ALJ claims. In fact, the report indicates that, although claimant's ankle had finally healed so that permanent

fusion apparently occurred, claimant was no better in regard to pain, swelling, or mobility after the second surgery than he had been before it. The report does not mention claimant's ability to return to work.

The ALJ found that claimant met his burden to show he was disabled between June 4, 1990 and September 4, 1994. *See* Appellant's App. Vol. II at 22. Because claimant always admitted that he could lift ten pounds, the ALJ's conclusion that claimant was functioning below the sedentary level before September 4, 1994 must have been based either on the existence of disabling back and ankle pain or on claimant's inability to sit for a long period without elevating his legs or standing up and moving around. *See* 20 C.F.R. § 440.1567(a) (defining sedentary physical exertion requirements); 20 C.F.R. § 404.1545 (defining RFC as the capacity to do work considering one's impairments plus related symptoms like pain). The ALJ stated that claimant's pain was not disabling after September 4, 1994 in part because he could still drive a car, *see* Appellant's App. Vol. II at 25, but claimant could drive a car before September 4, 1994, so the existence of that fact had no apparent relevance to whether claimant ever had or still had disabling pain. While recognizing the requirement to evaluate pain according to 20 C.F.R. § 404.1529 and listing the factors to be considered, the ALJ did not discuss those factors in relation to the evidence before him. Other than noting that the medical report prepared by the consulting

physician before the second surgery showed limitation of motion in claimant's back and hip joints, *see* Appellant's App. Vol. II at 24, the ALJ never discussed the medical records indicating a back impairment or claimant's claim of inability to sit for long because of back pain.

The ALJ did not specifically comment on claimant's testimony that he needed to lay in a recliner or on a couch or, if sitting, to stand and move around often in order to prevent swelling and disabling pain. He simply made a finding that claimant's subjective complaints "since September 4, 1994 . . . are shown as exaggerated." *Id.* at 22. In making this finding, the ALJ apparently found claimant's testimony that he had unsuccessfully tried to do sedentary work in July 1994 to be credible, but his testimony that he had unsuccessfully tried to do the same sedentary work after September 4, 1994 (just a few weeks before the hearing) not to be credible. Nowhere in the medical record do claimant's treating or consulting physicians indicate that claimant's complaints of pain were not credible.

The magistrate judge upheld the ALJ's credibility finding, stating that the medical "records show no recommendation as to physical therapy, prescribed pain medication, nor any opinion limiting Plaintiff's being able to engage in substantial gainful activity." *Id.* Vol. I at 11. That statement, however, is belied by the record. *See, e.g., id.* Vol. II at 192-96 (physical therapy records showing

back treatment and prescription refills for Vicodin and Flexiril); *id.* at 241 (treating physician's report on March 23, 1993 stating that claimant had been totally disabled since June 4, 1990, still was, and needed further surgery for feet to try and correct back problems). The record also shows that claimant made persistent attempts to find relief for his pain and had tried every treatment prescribed. *See, e.g., id.* at 173 (noting claimant's compliance with physical therapy and exercise requirements, refilling pain medications); *id.* at 207 (medical report noting that claimant used cane 90% of the time because of pain, that claimant took Flexiril to relieve low back muscle spasms and pain caused by change in gait, and that claimant had decided to have second surgery because daily activities had been unacceptably altered by pain); *id.* at 219 (treating physician's report noting that claimant had "tried everything else including using a cane, orthofeet, anti-inflammatory medication, muscle relaxants, physical therapy, etc."); *see Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987) (listing factors that ALJ should consider when determining the credibility of subjective claims of pain). We conclude that the ALJ's credibility finding is not supported by the record.

In short, the ALJ did not point to any evidence to explain why claimant was functioning below the sedentary level before September 4, 1994, but not afterward or to show that claimant's disability ended on September 4, 1994. The

conclusion that the disability period should be closed as of September 4, 1994 must, therefore, be rejected. *Cf. Shepherd*, 1999 WL 498260 at \*4 (holding that insufficient evidence supported conclusion that improvement had occurred by certain date where no medical record showed improvement); *see also Bowling v. Shalala*, 36 F.3d 431, 437 (5th Cir. 1994) (affirming award for closed period because award of benefits for that period not challenged by Commissioner, but reversing judgment based on issue of whether closure was supported by substantial evidence).

That part of the judgment of the United States District Court for the Eastern District of Oklahoma that affirms the award of disability benefits from June 4, 1990 is AFFIRMED, but that part of the judgment that affirms the conclusion that the period of disability was properly limited to September 4, 1994, is REVERSED and the case is REMANDED with directions to remand to the Commissioner for a continuing award of benefits until such time that a finding of no disability is made.

Entered for the Court


James E. Barrett
Senior Circuit Judge


-11-