**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 19 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

EDWARD L. SMITH,

        Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

        Defendant-Appellee.

No. 03-7071
(D.C. No. 02-CV-502-W)
(E.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **SEYMOUR** , Circuit Judge, **BRORBY** , Senior Circuit Judge, and **HENRY** , Circuit Judge.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

\*    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Edward Smith is a disability claimant who filed an application for benefits alleging disability due to radiating back pain. Mr. Smith's claim was initially denied, but an Administrative Law Judge (ALJ) awarded benefits for a closed period of disability, from December 18, 1996 through November 30, 1998. The Appeals Council denied Mr. Smith's request for review. Mr. Smith appeals from the magistrate judge's order affirming the decision of the Commissioner.[1] In our review, we determine whether the Commissioner's factual findings are supported by substantial evidence in light of the entire record and whether she applied the correct legal standards. *Threet v. Barnhart,* 353 F.3d 1185, 1189 (10th Cir. 2003). We reverse and remand for further proceedings.

Mr. Smith injured his back in March 1995, while working as a heavy equipment operator. Since then, he has undergone three major back surgeries, concluding with a spinal fusion procedure on September 27, 1997. At the one-year post-operative check-up on September 15, 1998, neurosurgeon Dr. Chris M. Boxell noted that Mr. Smith had "reached maximum medical benefit," but with "less than optimum result." Aplt. App. at 179. Though x-rays showed that the fusion was solid and examination indicated good leg strength, Mr. Smith was "no better." *Id.* at 180. He suffered from "the same leg pain as he had previously."

---

[1] The parties consented to proceeding before a United States Magistrate Judge. *See* 28 U.S.C. § 636(c).

*Id.* at 180. Dr. Boxell did not believe that the medical profession was presently "able to provide [Mr. Smith] with any additional substantial pain relief." *Id.* Mr. Smith would need long-term medical monitoring of his medications for pain, neuropathic pain, and muscle spasms. Dr. Boxell opined that Mr. Smith could not return to his past occupation and would not be a good candidate for retraining.

A non-treating, non-examining consultative physician disagreed with Dr. Boxell's opinion about employability. After reviewing Mr. Smith's medical records, the consultative physician completed a Residual Functional Capacity (RFC) evaluation which stated that "[w]hile there is much claimant cannot do, he can do some tasks." *Id.* at 202. According to the RFC evaluation, Mr. Smith could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours, frequently climb, balance, kneel, crouch, and crawl, and stoop occasionally. *Id.* at 197-98, 202. The consultative physician relied primarily on the portion of Dr. Boxell's September 15, 1998, note which stated that Mr. Smith's fusion was solid and his reflexes and muscular strength were intact. *Id.* at 197-98, 202.

At the hearing before the ALJ, held September 23, 1999, claimant testified that his back pain had not improved since his accident. His right leg "burn[ed] and [felt] numb all the time." *Id.* at 30. He stated that his pain was usually at five or six on a ten-point scale, that he could stand for thirty to forty minutes, and

sit for twenty to forty minutes. To deal with the pain, he sat in his recliner or lay down about three or four times a day. Mr. Smith relied on prescription medication for relief from pain and muscle spasms. The medication impaired his judgment and made him dizzy, drowsy, and lightheaded.

A vocational expert (VE) also testified. The ALJ posed a hypothetical question about jobs available to a person who could work at a light exertional level and stand or walk for no more than thirty or forty minutes at a time, for three or four hours during an eight-hour day. The VE answered that there were several light, unskilled jobs existing in significant numbers in the national economy that such a person could perform. If, however, the individual had to lie down due to pain, no jobs would be suitable.

In his decision, the ALJ determined that from December 18, 1996 through September 28, 1998, claimant met impairment listing 1.05C for vertebrogenic disorders of the spine, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.05C (1999). [2] But

_____

[2]    Listing 1.05C was revised in 2002; it is now included in listing 1.04. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04 (2003). At the relevant time, the listing, applied to "vertebrogenic disorders (e.g., herniated [disk], spinal stenosis), and required "the following [to] persist[] for at least 3 months despite prescribed therapy and expected to last 12 months[:]"

1. Pain, muscle spasm, and significant limitation of motion in the spine; and

2. Appropriate radicular distribution of significant motor loss with muscle
(continued...)

-4-

by September 29, 1998, "claimant demonstrated medical improvement which was related to his ability to work and . . . the residual functional capacity to perform" light work, subject to the limitations set out in the VE hypothetical. Aplt. App. at 6-17, 18. The ALJ did not mention Dr. Boxell's opinion on Mr. Smith's persistent pain. In fact, the ALJ stated that the objective medical evidence demonstrated that "claimant had substantial pain," but that it was relieved surgically by the fusion. *Id.* at 16. The ALJ discounted claimant's pain allegations, referring to the medical record, the RFC assessment, and the fact that "a fusion normally heals within one year from the date of the operation." *Id.* at 16. The ALJ also found that claimant had not sought treatment since September 15, 1998, that the record showed a lack of medication for severe pain, and that Mr. Smith's daily activities were inconsistent with his claimed pain.

Along with his request for review by the Appeals Council, Mr. Smith submitted additional medical records showing that after September 15, 1998, he had continued to receive treatment and prescriptions for pain medication. The records included a Medical Source Statement dated April 9, 2002, completed by a treating physician. The physician placed very stringent restrictions on

---

[2](...continued)
weakness and sensory and reflex loss.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.05C (1999).

Mr. Smith's physical capabilities and opined that claimant had been in "continuous pain since 1995 even after surgeries," *id.* at 260. The Appeals Council stated that it considered the additional evidence, but found no basis for changing the ALJ's decision. *Id.* at 4. On judicial review in the district court, the magistrate judge also declined to reverse the denial of benefits.

The controlling issue on appeal is whether the ALJ applied the correct legal standard in deciding that Mr. Smith's disability ended September 29, 1998. The medical improvement standard applies in closed period cases such as this one. *Shepherd v. Apfel*, 184 F.3d 1196, 1198 (10th Cir. 1999).[3] The ALJ must follow a specific process to determine "'if there has been any medical improvement in [a claimant's] impairment(s) and, if so, whether this medical improvement is related to [the claimant's] ability to work.'" *Id.* at 1201 (quoting 20 C.F.R. § 404.1594(a)).

> [T]he ALJ must first compare the medical severity of the current impairment(s) to the severity of the impairment(s) . . . present at the

---

[3] The regulations define medical improvement as:

> [a]ny decrease in the medical severity of [the] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the] impairment(s).

20 C.F.R. § 404.1594(b)(1).

time of the most recent favorable medical decision finding the claimant disabled. *See* [20 C.F.R.] § 404.1594(b)(7). Then, in order to determine that medical improvement is related to ability to work, the ALJ must reassess a claimant's residual functional capacity (RFC) based on the current severity of the impairment(s) . . . present at claimant's last favorable medical decision. *See id*. at § 404.1594(c)(2). The ALJ must then compare the new RFC with the RFC before the putative medical improvements. The ALJ may find medical improvement related to an ability to do work only if an increase in the current RFC is based on objective medical evidence. *See id*.

*Shepherd*, 184 F.3d at 1201.

Here, the ALJ awarded claimant a closed period of benefits, based on Listing 1.05C, without conducting an essential threshold analysis. At no point did the ALJ link the objective medical evidence to listing requirements, in contravention of clear Tenth Circuit precedent. *See, e.g., Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (stating that, with respect to listing requirements, "[t]he ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence," and with "discuss[ing] the evidence he accepted or rejected"); *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (same). Thus, the ALJ never made a proper determination with respect to claimant's status under Listing 1.05C, either before or after the "medical improvement" date of September 29, 1998.

The Commissioner argues that her determination is nevertheless affirmable because "when the severity of [a claimant's] impairments no longer satisfies the

requirements of the same listing section used to award disability benefits, the Commissioner will find that there has been medical improvement and that [claimant's] medical improvement is related to his ability to work." Aplee. Br. at 8 (citing 20 C.F.R. § 404.1594(c)(3)(i); *Glenn v. Shalala*, 21 F.3d 983, 987 (10th Cir. 1994)). The problem, however, is that the ALJ failed to provide reasons for concluding that the claimant's impairment met Listing 1.05C before, and not after, September 29, 1998. Under these circumstances, the Commissioner's argument puts the cart before the horse.

The Commissioner also attempts to justify her decision with a *post hoc* examination of Mr. Smith's medical records in light of the Listing 1.05C requirements. The missing analysis cannot be supplied on judicial review. *See Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir. 2004). We cannot "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.*

Because the Commissioner did not apply the proper medical improvement standard, we must reverse to allow the Commissioner to conduct the required analysis. Therefore we do not reach Mr. Smith's contention that substantial evidence does not support the Commissioner's decision. We remind the Commissioner, however, of four well-established requirements which she must observe in evaluating the evidence on remand. She should (1) consider the

relevant evidence submitted to the Appeals Council, *see Threet*, 353 F.3d at 1191-92 (stating that such evidence is part of the administrative record in evaluating a decision for substantial evidence); (2) give appropriate weight to the treating physicians' opinions, *see Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (requiring an explanation for the weight given to such opinions); (3) conduct a nonconclusory credibility analysis which takes into account Mr. Smith's consistent seeking of medical assistance and pain-relieving medication, *see Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (requiring the ALJ to "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible"); and (4) refrain from using boilerplate language, *see Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) (stating that language identical to that used in the ALJ's decision is "improper" boilerplate).

We **REVERSE** and **REMAND** this case to the district court with instructions to remand to the Commissioner for further proceedings in accordance with this order and judgment.

Entered for the Court

Stephanie K. Seymour
Circuit Judge