**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

LAURA TUTTLE,

     Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

     Defendant - Appellee.

No. 20-5048
(D.C. No. 4-19-CV-00088-FHM)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES**, and **BACHARACH**, Circuit Judges.
_____

Laura Tuttle appeals from an order of the district court affirming the Social

Security Commissioner's denial of her applications for disability insurance benefits

and supplemental security income under the Social Security Act.  Exercising

jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

---

     [*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

# I. Background

## A. Relevant medical history

Ms. Tuttle is a high school graduate with two years of college courses, and her past work experience includes cashier-checker. She claimed she became disabled on February 1, 2015, when she was forty-three years old, due to severe anxiety, severe depression, and bulging discs. This appeal, however, involves only her physical impairments. Those stemmed from a car accident on November 18, 2015. Ms. Tuttle went to the emergency room that day, where an x-ray showed marked degenerative disc disease at C5-C6. She was released with muscle relaxants and pain medicine.

Thereafter, Ms. Tuttle saw a chiropractor a number of times for neck and shoulder pain. The chiropractor referred Ms. Tuttle to Kris Parchuri, D.O., whom she saw monthly from April to September 2016 for complaints of neck pain with numbness and tingling in the upper extremities, and pain in the low back and right leg. At the April and May visits, Dr. Parchuri reviewed MRIs of Ms. Tuttle's cervical and lumbar spine.[1] His examination findings were mostly consistent through the period: diffuse pain in the cervicothoracic junction limiting range of motion;

---

[1] The March 31, 2016 cervical MRI showed a subtle disc bulge at C4-C5 with borderline narrowing of the central canal and slight foraminal narrowing; a larger disc protrusion at C5-C6 with end-plate spurring, moderate foraminal narrowing, mild central-canal narrowing, and possible slight contact with exiting C6 nerves; and a shallow disc protrusion at C6-C7 with borderline to minimal foraminal narrowing and subnormal central-canal caliber. The April 12, 2016 MRI of Ms. Tuttle's lumbar spine showed disc bulges at L1-L2 and L3-L4; borderline L3-L4 foraminal narrowing; a patent (open) central canal; and disc protrusion at L4-L5 with facet hypertrophy and mild foraminal narrowing.

diffuse lumbar pain, worse with extension; some dysesthesias (loss of sensation) in the hands bilaterally and the right thigh (although at the September visit he noted her upper and lower extremities had intact sensation); positive straight-leg raise for back, buttock, and thigh pain; no motor deficits; and symmetric reflexes at 2/4. Dr. Parchuri's assessments were also consistent through the period—cervical radiculopathy secondary to C5-C6 disc protrusion, cervical stenosis, neck pain, lumbar radiculopathy, and low back pain.

Dr. Parchuri's treatment comprised pain medications (Norco and Mobic), a muscle relaxant (Zanaflex), and a series of three cervical and two lumbar epidural injections in April, May, and August 2016. By the June office visit, Dr. Parchuri thought Ms. Tuttle had exhausted conservative care and discussed the option of cervical discectomy, decompression, and fusion. But Ms. Tuttle elected to continue with conservative care, including continued chiropractic visits. The epidural injections provided some measure of temporary improvement for her neck pain— Ms. Tuttle reported a 30% improvement in May, and by September she was "improved" but still had "some residual neck and back pain." Aplt. App., Vol. 5 at 520. Throughout the period, however, she continued to complain of low-back pain radiating down her leg. At the September office visit, Dr. Parchuri discharged Ms. Tuttle from care, reiterating his opinion that surgery would be the definitive treatment for her neck pain.

Ms. Tuttle returned to Dr. Parchuri on November 21, 2016, primarily complaining of neck and radiating arm pain, but also of back pain. She decided to

3

proceed with neck surgery. The same day, Dr. Parchuri completed a residual functional capacity (RFC) evaluation, opining that because of pain due to a "C5-C6 disc herniation," Ms. Tuttle could sit, stand or walk, and use her arms and hands for no more than two to three hours each in an eight-hour workday. *Id.* at 490.

On January 3, 2017, Dr. Parchuri performed the neck surgery, noting that there was "[m]uch more significant spondylosis . . . than on the preoperative MRI," and a "severely stenotic central canal and lateral recess region due to uncovertebral joint hypertrophy." *Id.* at 506.

On January 16, 2017, Dr. Parchuri saw Ms. Tuttle for a follow-up, noting that "[o]verall she is doing well," she "reports no issues," "her pain is getting better," and she had "a non-antalgic gait," did not use an "assistive device," and was "neurologically intact." *Id.* at 526. Dr. Parchuri saw Ms. Tuttle a final time on February 20, 2017, and reported that she "continues to do well with regard to her neck," "feel[s] her pain is improving," and "states that now that her neck is better she has noticed more pain [in] her low back along with muscle tightness." *Id.* at 491. Dr. Parchuri's examination showed Ms. Tuttle was "[p]ositive for shoulder pain, hip pain, muscle weakness, neck pain and back pain," but was in "no acute distress," had "a non-antalgic gait," used "no assistive device," and was "neurologically intact." *Id.* He found she had "diffuse pain to the lumbar spine graded as mild with paraspinal musculature tightness." *Id.* Dr. Parchuri concluded that Ms. Tuttle "seem[ed] to be doing well with regard to her neck at this time." *Id.* at 492.

4

**B.      Agency proceedings**

The agency denied Ms. Tuttle's claims initially.  She requested a hearing before an administrative law judge (ALJ), which was held in March 2018.  Ms. Tuttle testified as follows about her physical limitations:  It hurts to sit or stand more than 30 to 45 minutes and she can only walk about a block before back pain forces her to stop.  She has hand, finger, and right leg numbness.  The hand numbness affects her ability to grip, hold, and manipulate things.  She can pick up a gallon of milk but must set it down immediately or her arm starts to shake.  Despite the neck surgery, she still has a lot of neck pain, which gives her headaches.  Medication controls her pain for a little while.  She does only light cleaning and usually uses a microwave to cook.  It hurts to lift her arms over her head and to bend down to tie her shoes.

In a written decision, the ALJ followed the five-step sequential evaluation process used to review disability claims.  *See Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (explaining five-step process).  The ALJ found Ms. Tuttle had several severe impairments—degenerative disc disease status post cervical surgery, depression, and pain disorder—but none of them, alone or in combination, met or medically equaled the severity of one of the impairments listed as disabling in the Commissioner's regulations.  The ALJ then found Ms. Tuttle had the RFC to perform sedentary work with additional limitations.  In relevant part, the ALJ found Ms. Tuttle was able to lift and/or carry ten pounds occasionally and up to ten pounds frequently; could stand and/or walk at least two hours and sit at least six hours in an

5

eight-hour workday; had to avoid work above the shoulder level; and could perform simple, repetitive tasks.

In reaching that RFC finding, the ALJ gave no weight to Dr. Parchuri's more restrictive pre-surgery RFC opinion because it was inconsistent with his post-surgery examination findings that Ms. Tuttle's neck was doing well, she had no problem other than mild lumbar pain, and she was neurologically intact.[2]  The ALJ also found that while Ms. Tuttle's medically determinable impairments could be expected to produce the symptoms she described, her "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record."  Aplt. App., Vol. 2 at 26.

Next, the ALJ found that although Ms. Tuttle's RFC precluded the performance of her past relevant work as a cashier-checker, she could perform other work that exists in significant numbers in the national economy, such as touch up screener, document preparer, and final assembler.  Therefore, the ALJ found Ms. Tuttle not disabled at step five of the evaluation process.

After exhausting her administrative remedies, Ms. Tuttle filed a civil action seeking review.  The district court affirmed the ALJ's decision, and Ms. Tuttle appeals.

---

[2] At the hearing, a vocational expert had testified that a person with the limitations in Dr. Parchuri's RFC opinion, in particular an inability to sit or stand/walk for more than three hours each, would be unable to work at any jobs.

6

## II. Discussion

Our task in this appeal is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). We cannot "reweigh the evidence" or "substitute our judgment for that of the agency." *Barnett*, 231 F.3d at 689 (internal quotation marks omitted).

Ms. Tuttle raises two arguments: (1) the ALJ did not give legitimate reasons for rejecting Dr. Parchuri's RFC opinion and (2) the ALJ did not properly evaluate Ms. Tuttle's statements regarding her limitations. We disagree with both contentions.

### A. Dr. Parchuri's opinion

An ALJ must give controlling weight to a treating source's opinion on the nature and severity of a claimant's impairment if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[3] If a treating-source opinion is not entitled to controlling weight, an

---

[3] The guidelines in §§ 404.1527 and 416.927 apply because Ms. Tuttle filed her benefits claims before March 27, 2017. Different guidelines apply to the

ALJ must then determine if it is entitled to any weight by using factors drawn from §§ 404.1527(c) and 416.927(c).[4]  An ALJ is not required to discuss all of those factors but must provide "good reasons" for the weight assigned.  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Ms. Tuttle argues that the ALJ's reason for giving no weight to Dr. Parchuri's RFC opinion—that it was inconsistent with his post-surgery examinations—was not a good reason, because that opinion was consistent with Dr. Parchuri's pre-surgery examinations.  She contends that by the time of Dr. Parchuri's RFC opinion on November 21, 2016, just over twelve months had passed since the November 18, 2015 car accident that caused her physical impairments.  She therefore posits that the ALJ should have accepted Dr. Parchuri's RFC opinion and found her disabled prior to her surgery, because "disability" is defined in relevant part as the "inability to engage in any substantial gainful activity by reason of any medically determinable

---

evaluation of claims filed on or after that date.  *See* 20 C.F.R. §§ 404.1520c, 416.920c.

[4] We have summarized those factors as:

(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotation marks omitted).

8

physical or mental impairment . . . which has lasted . . . for a *continuous period of not less than 12 months*," 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (emphasis added).

This argument suggests entitlement to a closed period of disability. "In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." *Shepherd v. Apfel*, 184 F.3d 1196, 1199 n.2 (10th Cir. 1999) (some internal quotation marks omitted). But in this court, Ms. Tuttle has not expressly referred to a closed period of disability. And in the district court, she appears to have ultimately abandoned a closed-period theory. There, she argued in her opening brief that the ALJ failed to consider whether she "was continuously disabled for twelve months prior to the date she was last insured, December 31, 2016, and the date of her surgery, January 3, 2017." Aplt. App., Vol. 1 at 12. But in her reply brief she asserted she "never argued that this [is] a 'closed period' case," while making an additional, apparently contradictory assertion later in the same paragraph that "proper consideration of the pre-surgery evidence could result in a finding of disability, even if it is for a closed period." *Id.* at 38. The district court accepted the first assertion as "confirm[ation] that [Ms. Tuttle] is not arguing for a closed period of disability." *Id.* at 44 n.2. The court said nothing about the second assertion.

Based on this apparent waiver of a closed-period theory in the district court and the district court's treatment of it as waived, we may decline to consider it on appeal. *See Wall v. Astrue*, 561 F.3d 1048, 1066-67 (10th Cir. 2009) (refusing to

9

consider an argument that a social security claimant had waived in the district court through "'perfunctory presentation'" and which the district court considered waived). But even overlooking waiver and treating Ms. Tuttle's appellate argument as one based on an entitlement to a closed period of benefits, we reject it. Nothing in Dr. Parchuri's RFC opinion indicates when the proffered limitations began, let alone that they began at least twelve months prior to either the neck surgery or his post-surgery findings that the surgery was effective with respect to her neck pain and Ms. Tuttle had only mild lumbar pain and muscle tightness. Moreover, Dr. Parchuri gave his RFC opinion when Ms. Tuttle's pain was severe enough that she finally elected surgery. Under these circumstances, it was appropriate for the ALJ to evaluate that opinion in light of the improvements that Ms. Tuttle's neck surgery provided and to conclude that Dr. Parchuri's post-surgery findings rendered his pre-surgery RFC opinion stale. *See Chapo v. Astrue*, 682 F.3d 1285, 1292-93 (10th Cir. 2012) (faulting ALJ for relying on stale medical opinion regarding claimant's limitations). Accordingly, we see no legal error in the ALJ's finding that the pre-surgery RFC opinion was entitled to no weight.

We might alternatively construe Ms. Tuttle's appellate argument to be that Dr. Parchuri's RFC opinion establishes she was disabled for at least a continuous 12-month period prior to her surgery, and consequently the ALJ should have found her disabled as of the date of his decision and entitled to ongoing benefits. But this argument fails for two independent reasons: (1) Dr. Parchuri's opinion lacks any temporal component and (2) Ms. Tuttle cites no authority for the proposition that

10

being disabled for what is essentially a closed period entitles a claimant to an award of ongoing benefits, and we are aware of none.

**B.      Ms. Tuttle's subjective complaints**

As noted above, the ALJ found that while Ms. Tuttle's medically determinable impairments could be expected to produce the symptoms she described, her "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Aplt. App., Vol. 2 at 26. Ms. Tuttle argues that the ALJ committed legal error by (1) not "closely and affirmatively link[ing]" this finding "to substantial evidence," *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted); (2) evaluating her symptoms based solely on the objective medical evidence, which is prohibited when finding a claimant not disabled, *see* SSR 16-3P, 2017 WL 5180304, at *5 (Oct. 25, 2017) ("We will not evaluate an individual's symptoms based solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled."); and (3) not discussing her daily activities, location of pain, aggravating factors, and treatment, which are among the factors listed in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) that an ALJ should consider when evaluating symptoms and determining how much they limit the capacity to work. We disagree.

When evaluating the functional effects of a claimant's subjective symptoms, an ALJ need not engage in "a formalistic factor-by-factor recitation of the evidence"; as "long as the ALJ sets forth the specific evidence he relies on in evaluating the

11

claimant's credibility," he satisfies "the dictates of *Kepler*." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).[5] In this respect, "common sense, not technical perfection, is our guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

The ALJ met this standard. The ALJ reviewed the medical evidence in detail and, for each portion of it, found that the evidence was inconsistent with the alleged severity of Ms. Tuttle's complaints at the time of the hearing and did not contradict his less-than-sedentary RFC finding. Ms. Tuttle complains that the ALJ did not explain in detail *why* the medical evidence was inconsistent with her subjective report of her limitations, and she points to several pieces of evidence she claims are consistent with her subjective statements: consistent neck and low back pain; dysesthesias in her hands and right leg; positive straight-leg-raise test; and Dr. Parchuri's findings during the neck surgery that there was "[m]uch more significant spondylosis . . . than on the preoperative MRI" and a "severely stenotic central canal and lateral recess region due to uncovertebral joint hypertrophy," Aplt. App., Vol. 5 at 506.

But except for Dr. Parchuri's findings during the surgery, the ALJ expressly considered all the evidence Ms. Tuttle identifies, which predated the surgery, and

---

[5] Effective March 28, 2016, the Social Security Administration "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy" because its "regulations do not use this term." SSR 16-3P, 2017 WL 5180304, at *2. But because the underlying regulations governing symptom analysis (20 C.F.R. §§ 404.1529 and 416.929) remain the same, case law interpreting those regulations continues to be relevant.

explained why Ms. Tuttle's testimony about her limitations at the time of the hearing (in March 2018) was inconsistent with the objective medical evidence. The ALJ noted that the "the neck surgery was successful in significantly improving [her] neck pain and related ailments," and "after the neck surgery, despite her increased awareness of the problem, her low back problems were only rated at mild," *id.*, Vol. 2 at 28. The ALJ also relied on the relatively unremarkable examination findings from Ms. Tuttle's September 2017 visit to an emergency department for complaints of moderate radiating lumbar pain, which had started three days prior to her visit—full range of motion but with pain on extension, right rotation, and right side bending; right sacroiliac joint tenderness; negative straight-leg testing; normal strength; and no tenderness, swelling, or deformity. *Id.*, Vol. 6 at 666. The ALJ noted that Ms. Tuttle did not complain of any neck pain at that visit.

These were all valid considerations under §§ 404.1529(c) and 416.929(c). And contrary to Ms. Tuttle's contention, the ALJ took into account more than just the objective medical evidence; he considered the location of her pain and her treatment, most notably the successful neck surgery. Furthermore, the ALJ's explanation was adequate, and given the result of the neck surgery and the absence of later complaints about neck pain or related symptoms, we see no error in the ALJ's failure to discuss Dr. Parchuri's findings during the surgery.

Finally, the ALJ also considered other evidence—Ms. Tuttle's daily activities, in particular those reported by her mother and a friend, and the opinions of two non-examining consultants whose opinions the ALJ gave little weight because the

13

record supported limitations on performing work above the shoulder level. Although Ms. Tuttle faults the ALJ for not discussing any aggravating factors, an ALJ is not required to discuss every factor, *see Qualls*, 206 F.3d at 1372, and Ms. Tuttle has not explained how an express discussion of any aggravating factors would have altered the ALJ's evaluation of her subjective complaints or undermined his RFC finding. We therefore see no reversible error in the ALJ's failure to expressly discuss any aggravating factors.

### III. Conclusion

The judgment of the district court is affirmed.

Entered for the Court

Jerome A. Holmes
Circuit Judge